Our third case for argument today is West v. Charter Communications. Mr. Cox, that water container has a peculiarity. It doesn't matter how you try to pour it. It resists. Unscrewing the lid sometimes helps. Please. Mr. Cox. Thank you, Your Honors. Counsel, may it please the Court. Again, my name is John Cox. I represent the appellant, Stephen West, here. The issue on appeal is does the language of the Cable Act allow a cable company the right to appropriate a private easement without... Believe it or not, Mr. Cox, I think we have three jurisdictional issues before we get there. And I want to start with the simplest, whether we have an appealable judgment from the district court, the ground on which this court dismissed the appeal last time. I would have thought that having had a previous appeal dismissed, you would be scrupulous about appellate jurisdiction. So I look in your brief to find the district court's judgment, which are rules required to be there. And it's not there. It's just not. The original opinion is, I believe, and not the final judgment. The rules require both the opinion and the judgment. So I went and got the judgment. And it says the court now enters final judgment in favor of charter and against West. It also reports that West's claim against Louisville has been settled. There were, of course, four defendants. Louisville, charter, Incite Kentucky Partners II, and Time Warner. The district court's judgment does not mention Incite Kentucky Partners II or Time Warner. The claims against them appear to be still pending in the district court. And then we don't have a final decision. Is there a way around this problem? I believe the way around it is I think everyone before the court today, Your Honor, would concede that all of the claims are in tune. Well, people around the table now might think that, but does the district judge think that? Absolutely, Your Honor. How do we know? I don't have that particular judgment in front of me, but I believe that he understood. You should. Look, it is a basic rule that if the plaintiff sues four people, the judgment's not final until the claims against all four have been resolved. The district court has told us that it has finally resolved the claims against two of the four defendants. Now, you may think that the judge thinks he has resolved the claim against the other two, but the way to find that out is to get it in a judgment. Did you point out to the judge that this judgment is not conclusive? No one ever addressed the issue as to whether the cable company was treated as one in the same? Well, I suspect you may need to go back to the district judge and get a final judgment. The second jurisdictional problem in this case concerns subject matter jurisdiction. As you know, but apparently charter does not know, when there are partnerships or LLPs or LLCs or any other non-corporation, it's necessary to know the identity of every single member, and if any of them is a partnership or an LLC, of every single member of them all the way down to the bottom. Correct. Your brief has quite a list, but it doesn't appear to go all the way down to the bottom. And charter has furnished us, we directed it to file a supplemental jurisdictional statement because its brief is plainly inadequate. It filed a supplemental jurisdictional statement that treats partnerships and LLCs as if they were corporations and reveals none of the membership or the citizenship of any of the members. So how do we know that we have complete diversity of citizenship? We alleged it, Your Honor, in the original complaint. The issue wasn't raised by Tom Warner. It was raised the first time on appeal where we responded with the best information we had. But the best information you have is not complete. And we thought it was. I thought we went all the way down with respect to the corporation. I tried working through this, and it doesn't look sufficient to me. That's one reason why we ordered charter to file a jurisdictional statement, because charter surely has this information better than you do. And then charter filed a document which was legally preposterous by treating partnerships the same as corporations. So how do we know we have diversity of citizenship? And, Your Honor, with all due respect, I thought when we went through it, when we worked through who the partners were of the partnerships, we got all the way down to the corporate entity where we addressed the issue you were concerned about. I couldn't work that out for myself. And we did it. And the one litigant that knows the answer has, despite being ordered to provide it, failed to do so. This leaves us in a very difficult place. Finally, I said I had three jurisdictional problems. I don't understand why this isn't a request for an advisory opinion. The district court appears to have resolved the rights of Charter V.A.V. Louisville, which maintains the polls. But this case isn't about Charter V.A.V. Louisville. It's about West V.A.V. Charter. And I don't see how this act speaks at all to the rights of West V.A.V. Charter. And if it doesn't, the district court has simply made an advisory opinion and not yet resolved this litigation. We need to know the rights of West V.A.V. Charter, not the rights of Louisville V.A.V. Charter. And, Your Honor, we took his opinion as expressing that the cable company had the right to install that line or keep that line across Mr. West's property based on the Cable Act. And that's why we appealed it. With respect to Louisville, that's perfectly straightforward. But it's not remotely clear that this act creates any rights V.A.V. landowners. In any event, that's the statute as written and the district judge opinion as written concerns the rights of Charter V.A.V. Louisville. And they filed a motion to dismiss our claims. We didn't raise the Cable Act. They raised it. I frankly wasn't experienced with it. They raised it and our claims were dismissed. What is West's claim against Charter? West's claim against Charter is that they don't have permission to be on his property. They're trespassing. It's a trespass claim. How has Charter trespassed? Louisville might have trespassed if it exceeds the scope of the easement. How has Charter trespassed? Charter hasn't come on your lands. Charter has put its fiber optic cable on there. No, if I understand correctly, Louisville has put a fiber optic cable on and is leasing space to Charter or anybody else who will pay it. Take another normal example. An electric utility like Louisville will wheel power for third parties, for Dayton Power, for Indianapolis Power and Light. You don't have to have a deal between Mr. West and Indianapolis Power and Light for Louisville to wheel somebody else's power over that line. It's not a separate trespass. The information and electricity that go through the line are not themselves trespasses. You see the problem. I understand your concern, Your Honor. Under the terms of the agreement between the cable companies and LG&E, it says that the – I wish you would use real words. LG&E is not a word. Under the – call it the power company? You can call it the power company. You can call it Louisville, as I've been doing. All right. Yes, you might or might not have a good claim against Louisville, but that claim has been settled. I don't understand how somebody whose power or information goes over the tower that Louisville maintains is a separate trespass. That's what I'm missing. From my perspective, Your Honor, first of all, the agreement between Louisville and the cable company says that under no circumstances should that be considered Louisville's property. Look, you may or may not have a good claim against Louisville. Louisville has been – that claim has been settled and dismissed. I'm trying to figure out whether West has a claim against Charter, whose information goes over the line but which does not physically trespass on the property. And the agreement says that that line is still Charter's line. Am I being unclear? The agreement is an agreement between West and Louisville. Correct. What rights West has via Louisville are not before us. That's been settled. Correct. I'm trying to figure out how a claim that Louisville has allowed its towers to transmit information is a claim of trespass under any law. If Louisville has no right to give somebody permission to come on a third party's property, if they tell another person they can come on that property, that doesn't make a – I have not seen a claim that any third party came on the property. All the description is that this wire was strung by Louisville. This is Time Warner's wire. I don't – It's their property on West's property. Time Warner. There's no judgment about Time Warner. The brief actually says there's no such thing as Time Warner. Let's call it Charter or, if they prefer, Insight. Are you alleging that employees of Charter or Insight came on West's land to install this wire? No. Okay. They come on the property to maintain it. They've been on his property. That's how my client found out that it was on the tower. He did not know that this was a cable wire until – When you say they came on to maintain it, who is the they? Representatives of the cable company. He did not know that it was even on his tower until that point. Okay. I just want to be clear. You are alleging physical trespass and not just informational transmission. It's correct. Correct. The Cable Act, and what this appeal hinges on if we get past the issues Your Honor has raised, allows for cable companies to install a cable system over public rights of way and through easements which have been dedicated for compatible uses. The issue that's gone up in multiple circuits is what is meant by the word dedicated. And when you consider what the 3rd, 4th, 8th, 9th, and 11th have done, they've all looked at that issue and said the term dedicated means in the legal sense, not the ordinary sense. And what that means is we look at what they've done, which is the Black's Law Dictionary definition, which is the appropriation of land or an easement by the owner for the use of the public, and there's been acceptance for such use by the public. So if that were applied in this case, the district court's decision was wrong. The district court got off the rails by looking at a Michigan Court of Appeals case, ignoring the five circuits that have already addressed this issue and found that dedicated meant the legal definition, and the district court found it was the ordinary, common, everyday usage. Mr. Cox, if the phrase dedicated to the public or to compatible uses is ambiguous, should we give some consideration to the 1984 House report that addressed this issue and seem to use the term and that phrase in its ordinary sense rather than the narrower legal sense? Well, again, as I mentioned, every circuit after that point has... I'm asking, we haven't decided this question before. Working from the statutory text, which seems ambiguous, the legislative history seems to favor a broader reading. Why should we not pay attention to that? The legislative history, if you go back and look, it started with the bill and there was a section 633, and so the purposes for the act were stated when there was a 633 in there. 633 was a portion of the act that addressed landlords, multifamily properties, commercial properties where you had landlords and mobile home parks. And what they said in that situation was that we're going to allow cable companies to come in, but we're going to provide for compensation for the taking in that situation. Then you had this situation where you have the words compatible or dedicated for compatible uses, and then there's a third category that the other cases have talked about, which are just private easements, regular old private easements. If you construe the middle category, which is dedicated for compatible uses to mean the broader situation or the broader definition, you wouldn't have needed 633 in the first place, which they originally deleted because every easement would allow for a cable company to come in. And I'm seeing I'm out of time. Well. As long as questions are being asked, you can keep giving answers. I was done with my answer. Okay. I've got a few questions about the. I'm sorry. Don't try to duck the question. Oh. Okay. Was, is it your contention that the 1984 House report was in that that passage that I'm referring to was referring to 633? I believe that they were talking about it in the context before 633 was deleted. When 633 was deleted, it became clear that, number one, cable companies couldn't go in and take easements in multifamily, commercial, or mobile home parks. But they also made it apparent that the only way you could get access through the Cable Act was in this other sort of bucket, which is the easements through, I'm sorry, easements that are dedicated for compatible uses. It doesn't, in that category, open that category, if it were interpreted in the way you just asked, there wouldn't have been a need originally for the multifamily 633 section that they intentionally deleted to resolve some of the problems that other senators raised. Okay. I also wanted to ask you about the relationship between state and federal law here. And if we can get past jurisdictional problems, we may not be able to, but I hope the defense will also talk about this a little bit. And that is this notion of compatible uses and the divisibility of easements. Because state laws seem to vary quite a bit in terms of what uses might be compatible with fiber optic cable transmissions. And I guess I'm trying to understand, Texas and Missouri, for example, seem to say that unless you've got an easement for telephone or telecommunications, then there's an additional unacceptable burden if, let's say, a gas pipeline company tries to allow a fiber optic communication cable to be laid. And that's not acceptable. Does federal law, does the cable law overcome state law in those situations? Do you see the federal law as asking what's compatible under state law or from a physical standpoint? Well, I think sort of tackling that issue in the reverse, coming back to the language dedicated for compatible uses, the only thing we focused on is the word dedicated and what that means. We don't dispute that if it had been dedicated for purposes of the legal definition, so opened up for the public at large, if it had been done that way, and we say it had not, then this would be a compatible use. But it hadn't been dedicated that way. So we're not in a situation arguing over what's compatible. What the district court did was they said we're going to interpret the word dedicated in this broader sense. And then all the circuits have said when you do that, when you adopt the broader definition and not the legal definition, then you raise these takings issues. And does there need to be compensation? Well, the district court got around that issue by saying that because this wire didn't materially burden Mr. West's property, he wasn't entitled to any compensation. And that's our second issue, which is materially burden is not the question when talking about takings and whether somebody's entitled to value. In Loretto, they say any physical invasion and only minimal impact can entitle someone to money. Under Indiana state law, which the Seventh Circuit cited in Greenfield Mills, they said no matter how minute of a physical invasion, somebody can be entitled to money for a takings. And the Supreme Court has said when you can interpret a statute in one of two different ways, one which creates a constitutional issue and one which does not, interpreting this in the broader sense creates the constitutional issue for a taking without just compensation. Okay. Thank you. Thank you, Mr. Cox. Mr. Werner. Mr. Werner. I hope you can tell what the initial questions are going to concern. I think I have a pretty good idea. Good morning, and may it please the court. Paul Werner for the defendants. This feels a little like deja vu because we were here about a year ago to discuss jurisdictional issues. Yes. All the more reason why I would expect the parties to be punctilious about jurisdiction this time. Yes, Your Honor. And that's not what happened. Yes, Your Honor. If I may address those, with respect to your first jurisdictional point and the final judgment, it appears to be a clerical error, and I imagine the parties can work with the court to have that corrected. I don't know whether it's a clerical error or not. The first problem is that our rules require it to be in the appendix to the opening brief, and it wasn't. Yes, Your Honor. But there was not only a violation of our rules. There was a false statement by Mr. Cox that everything required by the rules had been included, and then you paid no attention whatever to this. Yes, Your Honor. There was an oversight with respect to that that I believe that we can correct. We require lawyers to file jurisdictional statements in their briefs, in part to avoid what you just said. It was an oversight. No. Every lawyer for every litigant has to work these things through from scratch and do it right. Understood, Your Honor. I was sound asleep is not a good response. I understand, and it was, in fact, an oversight. With respect to the second jurisdictional problem. Let's try the second jurisdictional problem. Your supplemental jurisdictional statement contains things like, Insight Kentucky Partners 2LP and all but one of its members are Delaware limited liability companies with principal place of business in Stanford, Connecticut. I don't know how many times we have said that partnerships are not the same as corporations. You're completely right. They don't have state citizenship in that sense. It doesn't matter where their principal place of business is. We need to know the names of every single member and partner and all of their citizenships. And I look at your supplemental jurisdictional statement and none of that information is in it. Yes, Your Honor. I acknowledge that oversight as well. That's not an oversight. That's an egregious legal error in the teeth of precedent from the Supreme Court of the United States and this circuit and our instructions saying you got it wrong the first time. Do it right now. And we had actually filed an amended statement, as you know, and we had actually sought further guidance from the court on that because we weren't exactly sure what the issue was. What I can tell you is the statement in our jurisdictional statement in our brief related to the Insight defendants and all of the other defendants should be they are not citizens of Indiana. And, in fact, they are. We don't need to know where they're not citizens of. Understood, Your Honor. We need to know what they are citizens of, and we will draw the conclusions. Understood, Your Honor. We need to know every single member or partner of the defendants. If any of those is a partnership or an LLC or an equivalent non-corporation, we need to know the name of every single member or partner and their citizenships down as many levels as it takes to get to the bottom. We understand, Your Honor, and that, of course. Mr. Cox believes that the bottom turns out to be Comcast all around, but that has to be displayed. It is charter, Your Honor, all along. And to the extent that they are citizens. Charter. Too many Cs, my error. They are citizens of New York and New Jersey, and we will be happy to provide you a further supplement that traces that all the way out. But why should we be having this discussion at oral argument when the circuit has already told you your jurisdictional statement was inadequate, do it right. And then you do something that has no relation to the governing law. Understood, Your Honor. And then finally, is this anything other than an advisory opinion? Well, we think it is, Your Honor, because, in fact, Cox challenged Time Warner Insights and the other defendants' trespass on his property. And just to be clear. You're in West. I'm sorry, on West property. To be clear, the trespass concerns Insights wire that is on the tip top of the tower on West's property. So it is not the case that it is simply Insights information that is being transmitted across the property. Insights wire is at the tip top of the tower, and it serves both a utility purpose and a communications purpose. Mr. Cox just said, in response to my question, that the complaint alleges that employees of Charter or Insights have entered the land to do things with respect to this wire. Is that true? I believe that is true. But in addition. All right. So how? Let's put the Cable Act to one side. How does Charter get the authority to do that? Well, Charter gets the authority to do that under the Cable Act, Section 621A2. It is entitled to use easements that are dedicated to compatible uses. All easements are encompassed within that statutory right. And here, Charter or Insights has accessed and just piggybacked on an existing utility easement on West's property. That fundamentally is what he is complaining about. He's not simply complaining about, as we understand it, accessing his property to repair or maintain the wire on the tower. The fundamental complaint concerns the existence of the tower itself. And as we explain in our brief, West's property is consumed by a large and historic utility easement that was granted from one public utility to another for the broad public purpose of providing utility services to the public at large. Insights' use for communications purposes and the stringing of one wire at the top of the tower is fundamentally compatible with the use of that easement historically to provide utility services, and therefore, it's authorized by the Cable Act. I'm still not sure what the Cable Act is doing. If the easement authorizes this, the installation of this cable, and it says it refers to light, heat, power, telephone, and or other purposes. Well, this is pretty much in the category of either telephone and or other purposes. Yes, sir. If the easement authorizes it, why does anybody need to talk about the federal statute? Well, no one does. If the reading of the easement is as you say, then clearly Insights' use of the wire to provide cable service is within the scope of the easement. The district court did not resolve that easement. It had earlier denied a motion to dismiss brought by LG&E related to the scope of the easement and instead teed up in our motion to dismiss the issue of Insights' rights under the Cable Act. Do you think you had to pay Louisville Gas and Electric for access to the easement? Do we have to pay them? Under the federal act. No, we do not. There is an agreement between LG&E and Insights, but it concerns access. Between who and Insights? LG&E. Could you use real words? I already made this point to you. Louisville Gas and Electric. We are not specialists in this field. Using the English language rather than made up things really helps judges to follow what you're saying. Yes, Your Honor. And I'll just, to speak generally, it's the utility. There is an agreement between the utility and Insights concerning access to the utility structures that are owned by the utility. So there is that agreement, but no, Insights does not need to pay anyone to exercise its rights under the Cable Act. So did you, do you have to, I'm trying to understand how these negotiations work between the cable company and the electric company. Do you have to pay them? For access to their structures, yes. But not for access to the easement? No, they don't. Is that the theory? Sure. Just generally, and there are lots of these agreements around the country. There are agreements between the utility and the cable operator for access to the utility's structures for the cable company to string its wires. In those agreements, the utility generally just grants a right of access to its structures, not to any underlying easement. Cable operators historically, since the 1984 Cable Act, have relied on Section 621 as a right to access the easement itself. Okay. How do you understand, I mean, I've got to say, you've portrayed this as a test case, and it's about as extreme a test case as one can imagine with the, you know, barely visible wire at the top of the tall tower. But your statutory argument would seem to apply to far less extreme cases, where, for example, there's a gas pipeline that's buried underground, and is the cable company entitled to string poles and wires across that? Well, no, they're entitled to use easements that are for compatible purposes. And, of course, you need to look at the language of the easement to determine whether any particular use is compatible or not. Which I thought you had argued that any, and the district judge seems to have decided, that any utility easement of any kind is sufficient to authorize the cable companies to install and to access the easement. Well, any easement for compatible purposes, and that's an important qualifier. But what Congress was up to with Section 621 was trying to clear the way for the deployment of cable by allowing them to go everywhere utilities are. I understand. I understand. But, okay, let me ask you the question that I was trying to ask Mr. Cox, and that has to do with variations in state law about the compatibility of different utilities within the scope of utility easements. Sure. Texas and Missouri, as I understand it, have said, in essence, okay, if you've got a telephone or telecommunications easement, that's compatible, but not if it's gas or water. Sure. And this is the problem with the interpretation that West is pushing here because, ultimately… Well, are you arguing that federal law, for example, and you want us to say that federal law is so broad, for example, that it would trump the limitations in Texas or Missouri? Yes. Federal law, what Congress was up to was expressly trying to avoid cable operators having to go property-by-property, state-by-state. So why should we use the extreme case here to decide that issue? Well, this is the case before the court. I don't think that the court has to announce a particularly broad holding to rule, to affirm the district court here, because, clearly, when you look at the language of the easement and you look at the use, which, of course, West doesn't really even challenge as being incompatible with the utility use, is clearly within the scope of Section 621. And you had asked earlier about the ambiguity of the statutory language, and it would be appropriate to look to the legislative history. The legislative history is related to the final act as enacted by Congress and concerns specifically subsection A2, which this case arises under. But I would also point the court to look to the determination of the FCC that had interpreted this language. And, of course, that is… It's not the FCC, so the statute speaks for itself. It does, insofar as it allows access to all existing compatible utility easements. And to us, the language is clear on its face, and the court can rely on the common meaning. When Congress intended to use… It's so clear that five other circuits have read it very differently, right? Well, they have looked at it very differently in a different context, addressing a fundamentally different issue, and we discussed those cases in our brief. But the issue is… I'm just trying to suggest it's not that easy. Well, understood, Your Honor. But in those cases, what the court needs to understand is those courts were looking at cable operators who were seeking to do through Section 621 what Congress did not permit them to do by enacting Section 633. That is not this kind of case. This is a traditional utility easement. And whether you look at the common meaning or the more technical meaning, if you look at the legislative history and if you look at the way the FCC has interpreted it, as well as all other courts, all other courts have understood that Section 621A2 is for cable operators to use existing utility easements, and that is the use that Insight is making of the easement here. If there are no further questions, we'd ask the court to affirm the district court. Thank you. After we know we have jurisdiction. Yes. Well, I'm happy to discuss ways to cure those issues as well. We offer to submit a further supplement. We'll enter it in an appropriate order. Thank you, Your Honor. Mr. Cox, I used a lot of your time for issues you had not planned to discuss. We allowed you to go four minutes over in responding to Judge Hamilton's questions. I'll give you another two for rebuttal. You have no idea how rare that is. I was unsure whether I would get a rebuttal, but I appreciate it, Your Honor. I think it's important to go back to Loretto. The Loretto decision from the United States Supreme Court was addressing a New York statute before the Cable Act was in place. And what they said in Loretto was, in short, when the character of the government action is a permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner. So coming back to Judge Hamilton's point about it being a razor-thin wire, again, I don't think the extent of it is of relevance. Under easement law, if you're just talking about there's no easement, but we want to come in under federal law and install a wire on your property, that's Loretto, right? Correct. Okay. It's state law, and what they found in Loretto, they said they had to give compensation. Right, and they got a dollar, right? I don't remember what the amount was. That was it, on remand. Yeah. So it's not necessarily a pot of gold at the end of the rainbow here. But my concern has more to do with state laws regarding easements and their severability or divisibility, the ability of an easement holder to assign or delegate further rights to third parties. You've objected to that, and I guess where I'm struggling a little bit with this is how state and federal law fit together here. Right, and I understand that. And my point earlier was we start with the word dedicated and whether they gave the whole thing over. And if you look at the original easement, we talk about whether this was intended to be a broad, sweeping public easement or whether it was a private just for this one electrical energy issue, which is what Judge Easterbrook mentioned earlier. But that distinction matters. Let me just touch on Judge Easterbrook's point about the electrical. You will need to be brief because your two minutes has now run. All right. So the electrical energy, the easement itself, the court ruled on Louisville gases motion originally and found that the easement was ambiguous. This easement allows for crops to be grown by my client, a fence, buildings put up, all those kinds of things. It's not a broad, sweeping easement. Okay. Thank you. Thank you very much. We want parties to file supplemental statements within 14 days, addressing three questions. One is appellate jurisdiction, about whether this is a final decision by the district court. And perhaps you will conclude that you need to use some of those 14 days to persuade the district court to enter a final decision finally. The second thing that needs to be addressed is subject matter jurisdiction. We need from the parties, but I assume principally from charter, a complete listing of all of the partners and members, all of their partners and members, and so on, all the way down identifying their citizenships.  What is the substantive claim under state law under this state's law, as opposed to some potential other state? What is the claim under this state's law? And why the communications act is relevant to that claim by West against charter. These responses should be filed within 14 days. We'll enter a more, a written order as well, but that's the gist of it. And when those responses are received, the case will be taken under advisement. We'll go now.